# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WOODLAND PARK TOWNHOMES, LLC,<br><br>Defendant. | Case No. 2:18-CV-1206-RSL<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on plaintiff Developers Surety and Indemnity Company's ("DSIC") motion for default judgment. Dkt. #8.

## **BACKGROUND**

This case pertains to the Woodland Park Townhomes project ("the Townhomes"), which consists of seven townhome-units located at 4319-4325 Woodland Park Avenue North in Seattle, Washington. Dkt. #1 (Compl.) at ¶ 4.1. The Townhomes were built by defendant Woodland Park Townhomes, LLC ("Woodland Park"). Dkt. #6 at ¶ 1. Woodland Park has been sued in state court for various construction defects. See Woodland Park Townhomes Homeowners Association v. Woodland Park Townhomes LLC, Case No. 17-2-24978-5 SEA (King Cty. Sup. Ct.) ("the State Court Case").

On March 5, 2015, Hardy Development Company ("Hardy") retained Urban Construction Company, LLC ("Urban") as the General Contractor for the Townhomes. See Ex.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 1

I, Dkt. #9 at 23–25. Per their contract, Urban was obligated to add Woodland Park as an additional insured on its insurance policies. Id. at 24. DSIC issued Commercial General Liability Policy No. BIS0019539-0 for the policy period of July 28, 2014 to July 28, 2015 to Urban ("the Policy"). See Ex. Q, Dkt. #9 at 74–169. Woodland Parks asserts that it is an "additional insured" under the Policy's Blanket Additional Insured endorsement. Compl. at ¶ 3.2; see Ex. L, Dkt. #9 at 35; see Ex. Q, Dkt. #9 at 155 (Blanket Additional Insured endorsement).

Construction seems to have begun in 2015, sometime between April and August. See Exs. A–H, Dkt. #9 at 6–22. In 2016, the Woodland Park Townhomes Homeowners Association ("the HOA") was incorporated. See Ex. J, Dkt. #9 at 26–27. On September 22, 2017, the City of Seattle approved the Townhomes for occupancy. See Ex. H, Dkt. #9 at 22. On the same day, the HOA filed a lawsuit against Woodland Park alleging breach of contract, breach of express warranty, and breach of implied warranty of habitability. See Ex. K, Dkt. #9 at 29–33. Counsel for the HOA notified DSIC of the State Court Case on May 30, 2018. Ex. L, Dkt. #9 at 35–36.

DSIC agreed to defend and indemnify Woodland Park subject to a full reservation of rights. Ex. M, Dkt. #9 at 42–55. On August 15, 2018, DSIC filed a complaint seeking declaratory judgment as to the nature of its obligations. Woodland Park failed to respond. Default was entered against Woodland Park on October 3, 2018. Dkt. #7. DSIC now moves for default judgment. Dkt. #8.

## DISCUSSION

DSIC seeks default judgment and declarations that 1) no property damage occurred during the Policy period, 2) the Townhomes were Urban's "product," 3) the Townhomes were "new residential construction" and not covered under the Policy, 4) property damage only occurred after the Policy period and is not covered, 5) the Policy's construction management exclusion precludes coverage, and 6) additional conditions exclude coverage.

Federal Rule of Civil Procedure 55 provides for a two-step procedure to the entry of a default judgment. See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). Once an entry of

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 2

default has been made, the Court has discretion whether to enter a default judgment. Id. When exercising that discretion, courts may consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471–72.

### A. Sufficiency of the Complaint, Merits of DSIC's Substantive Claims, and the Possibility of a Dispute Concerning Material Facts

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). The Court will examine each of DSIC's allegations in turn, with an eye toward Eitel factors two, three, and five.

1. Property Damages

First, DSIC complains that the property damage to the Townhomes did not occur during the Policy period. Compl. at ¶ 6.1.2. The Policy expired on July 28, 2015. Id. at ¶ 4.3. The only factual basis for this claim is that "[c]onstruction on the Townhomes' structures began after August 28, 2015, when the City of Seattle approved the Townhomes' *foundational steel decking and fabrication*." Id. at ¶ 4.4 (emphasis added). However, in its motion for default judgment, DSIC argues that "structural decking approvals indicate that *the Townhomes' construction* did not begin until after August 28, 2015." Dkt. #8 at 15 (emphasis added).

The distinction is relevant. Construction Inspection Report dated August 28, 2015 states that "All PT tendons were properly installed and profiled. Re-steel was nearly completed. All holdowns were properly installed." Ex. E, Dkt. 9 at 16. It concludes, "All work was done as per approved plans." Id. It seems that at least some work was done on the property prior to the completion of this report, but it is not clear when it was done. The HOA's alleged injuries in the

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 3

State Court Case could potentially include defective reinforced steel or pre-stressed tendons. See Ex. K, Dkt. #9 at ¶¶ 6–8 ("The Property has a variety of construction defects and other deficiencies in building components."), 14, 17, 22, 25. The Court cannot conclude that the pre-stressed tendons or reinforced steel were constructed after the termination of the Policy.

Second, DSIC complains "[t]hat the HOA and/or individual homeowners did not suffer 'property damage' during the policy period." Compl. at ¶ 6.1.3. To support this claim, it pleads that the Homeowner's Association was not formed until 2016. Id. ¶ 4.5. However, each individual plaintiff in the State Court Case assigned his or her claims to the HOA. Ex. K, Dkt. #9 at ¶ 11. The Court cannot declare that the HOA had no property interest in the Townhomes prior to the termination of the Policy period. See Dkt. #1 at 6.

2. Urban's "Product" under the Policy

DSIC seeks a declaration that the Townhomes were Urban's "product," and thus not covered under the Policy. However, the definition of "product" explicitly excludes real property. Ex. Q, Dkt. #9 at 108 ("'Your Product' means … [a]ny goods or products other than real property, manufactured, sold, handled, distributed or disposed of …"). Because the Townhomes are real property, they are not Urban's "product." Mid-Continent Cas. Co. v. Titan Const. Corp., 281 F. App'x 766, 768–69 (9th Cir. 2008) (mem.) (adopting the common meaning of the term "real property" and holding that the same exclusion did not apply).[1]

3. Townhomes as "New Residential Construction"

DSIC alleges that the Townhomes were "new residential construction," which is excluded under the terms of the Policy unless it takes the form of a "common interest

---

[1] DSIC cites to Indian Harbor Ins. Co. v. Transform LLC, No. C09-1120-RSM, 2010 WL 3584412 (W.D. Wash. Sept. 8, 2010) (unpublished case), for the proposition that, because Urban would likely have "handled" or "distributed" parts of the Townhomes, they are Urban's "product." However, Indian Harbor was on different facts. In that case, pre-fabricated modules were "knitted" together into a larger condominium complex. Id. at *1. These modules ultimately proved defective, but the court found that they did not constitute "real property." Id. at *6 n. 3.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 4

development." Ex. Q, Dkt. #9 at 160. Common interest development is defined as a condominium, a community apartment or a stock cooperative. Id. at 161. While a townhome would appear to be different from a common interest development, the Court declines to consider the intent and effect of this provision in the absence of additional briefing.

### 4. Urban's Completion of Operations

The Blanket Additional Insured Endorsement terminates an additional insured's status when Urban's "operations for that additional insured are completed." Ex. Q, Dkt. #9 at 155 ("A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.") DSIC pleaded in its complaint that the property damage occurred after Urban completed its operations for Woodland Park. Compl. at ¶ 5.7; see Geddes, 559 F.2d at 560 (citing Pope, 323 U.S. at 12) (the Court takes all factual allegations as true).

### 5. Urban Acting as a Construction Manager

DSIC alleges that "Woodland Park hired Urban as the Construction Manager for the Townhomes' construction. Urban was obligated to perform superintendent/supervisor services over the project's daily operations." Dkt. #1 at ¶ 4.2. This, it claims, precludes liability because the Policy does not include coverage for services as a construction manager. Ex. Q, Dkt. #9 at 154. However, Urban's contract with Hardy describes Urban as a "general contractor," see Ex. I, Dkt. #9 at 24, and the Policy specifies that, "[f]or purposes of this exclusion, 'construction manager' or 'construction consultant' means any person or entity undertaking to manage, consult on, advise on, or control construction planning, activities or work except as a 'general contractor.'" Ex. Q, Dkt. #9 at 154.

### 6. The Remaining Claims

DSIC groups the four remaining claims together into a single allegation, stating that "Urban: (1) was not an additional insured under its contractors' or subcontractors' commercial general liability ("CGL") policies; (2) failed to obtain certificates of insurance from its

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 5

contractors or subcontractors; (3) its contractors' or subcontractors' CGL policies failed to provide insurance in amounts equal to or greater than the Policy; and (4) Urban did not obtain hold harmless agreements from its contractors and subcontractors indemnifying it against all loss related to work the contractors or subcontractors performed for Urban." Dkt. #1 at ¶ 6.1.8. The Policy's Additional Conditions Endorsement precludes coverage if those conditions are not met. Compl. at ¶ 3.11; see Ex. Q, Dkt. #9 at 140. The Court takes all facts pled as true. See Geddes, 559 F.2d at 560 (citing Pope, 323 U.S. at 12).

### B. The Remaining Eitel Factors

"[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir.1985)). This factor necessarily weighs against default judgment. However, the difficulty of adjudicating a case on the merits absent one party may lessen this factor's weight. Am. Commerce Ins. Co. v. Schierman, No. C12-0195JLR, 2012 WL 13018750, at *4 (W.D. Wash. June 25, 2012).

DSIC faces ongoing legal costs in the state court matter, and the risk of having to indemnify Woodland Park. These costs may be considerable, and this action is the only mechanism available to avoid incurring them. See Schierman, 2012 WL 13018750, at *3 ("[T]here is great risk of prejudice to the plaintiff if the motion is denied, because this action is the only means by which [it] can establish that it has no duty to defend or indemnify [the insured]."). There is no money at stake in the action. Eitel, 782 F.2d at 1471. DSIC seeks only a declaration of its obligations under the Policy and no costs.[2] Finally, no evidence of excusable neglect is before the Court. Id.

---

[2] In its complaint, DSIC requested attorney's fees. Compl. at ¶ 6.1.9. However, DSIC's motion for default judgment does not request attorney's fees. See Dkt. #8.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 6

# **CONCLUSION**

For all the foregoing reasons, DSIC's motion for default judgment is GRANTED IN PART. The Court hereby DECLARES as follows:

1. DSIC is not obligated to defend, nor indemnify against damages, Woodland Park Townhomes LLC in the matter of <u>Woodland Park Townhomes Homeowners Association v. Woodland Park Townhomes, LLC</u>, No. 17-2-24978-5 SEA (King Cty. Sup. Ct.) under Commercial General Liability Policy No. BIS0019539-0 ("the Policy");

2. All the property damage alleged in <u>Woodland Park Townhomes Homeowners Association v. Woodland Park Townhomes, LLC</u>, No. 17-2-24978-5 SEA (King Cty. Sup. Ct.) related to the Townhomes' structures, but not the foundational steel decking and fabrication, occurred after Policy No. BIS0019539-0 expired;

3. All the property damage alleged in <u>Woodland Park Townhomes Homeowners Association v. Woodland Park Townhomes, LLC</u>, No. 17-2-24978-5 SEA (King Cty. Sup. Ct.) occurred after Urban Construction Company, LLC completed its operations for Woodland Park;

4. Urban Construction Company, LLC (a) was not an additional insured under its contractors' or subcontractors' commercial general liability ("CGL") policies; (b) failed to obtain certificates of insurance from its contractors or subcontractors; (c) did not obtain hold harmless agreements from its contractors and subcontractors indemnifying it against all loss related to work the contractors or subcontractors performed for Urban Construction Company, LLC; and (d) Urban Construction Company, LLC's contractors' or subcontractors' CGL policies failed to provide insurance in amounts equal to or greater than Policy No. BIS0019539-0;

5. DSIC has no further obligations to Woodland Park Townhomes, LLC under Policy No. BIS0019539-0 regarding <u>Woodland Park Townhomes Homeowners Association v. Woodland Park Townhomes, LLC</u>, No. 17-2-24978-5 SEA (King Cty. Sup. Ct.).

DATED this 16th day of April, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT - 8